■ ARNULFO MORENO, Respondent, v GREATER NEW YORK DENTAL ADMINISTRATORS, INC., et al., Defendants, and YEN SHYUE-SHEN, Appellant.—Order, Supreme Court, New York County (Fingerhood, J.), entered March 28, 1985, which denied defendant Shen's motion to compel plaintiff to serve upon defendant a copy of his examining physician's report; to require plaintiff to provide a statement of the names and addresses of all such examining physicians; and, to require exchange of all such examining physicians' reports, reversed, on the law and the facts, and in the exercise of discretion, and the motion granted, with costs.

This is an action for negligence and dental malpractice in which it is alleged that, due to the improper extraction of a tooth from plaintiff, the plaintiff suffers from Bell's palsy, loss of hearing, and loss of vision.

During the course of an examination before trial of the plaintiff, it was discovered that he had been examined by Dr. Lawrence Kaplan, a physician who allegedly did not treat the plaintiff and whom the plaintiff does not intend to call as a witness at trial. The defendant's attorney promptly requested a copy of Dr. Kaplan's report. The plaintiff's attorney refused to make it available. The motion here under review ensued.

Special Term held that CPLR 3121 (b) and the "Medical Exchange Rule" (22 NYCRR 660.11) do not apply to the reports of examining physicians in a malpractice action. CPLR 3121 (b) is applicable to medical and dental malpractice actions. (Greuling v Breakey, 56 AD2d 540 [1st Dept 1977].) Siegel's Practice Commentaries to CPLR 3121 state:

"CPLR 3121 is just as applicable to the malpractice case as it is to any other.

"The individual court rules governing physical examinations and exchange of medical information may purport to exclude their application to medical or dental malpractice cases * * * This should be taken to mean only this: that the *rules* do not apply to the malpractice case. It should not (and could not) be accepted as meaning that CPLR 3121 does not apply to the malpractice case. To the extent that the rule's language may be susceptible of such a meaning, the rule is 'superseded' by CPLR 3121. See Pipers v. Rosenow, 30 A.D.2d 690 * * * (2d Dept 1968)." (McKinney's Cons Laws of NY, Book 7B, CPLR C3121:5, pp 573-574 [1970].)

Plaintiff contends that the defendant was not entitled to the report since the plaintiff had not "requested" the defendant's reports pursuant to CPLR 3121 (b). The Court of Appeals specifically rejected such a contention in *Hoenig v Westphal* (52 NY2d 605, 609-610 [1981]):

"Plaintiffs nonetheless resist disclosure based upon a purported restriction in CPLR 3121 on disclosure otherwise authorized. In plaintiff's view, CPLR 3121 is the exclusive mechanism for discovery of medical reports and a plaintiff may prevent discovery by the simple expedient of refusing to request medical reports in the hands of another party. Thus, the scope of discovery is to be determined by a plaintiff's strategic decision not to request an exchange of medical information. We decline to adopt such a narrow view of the discovery procedures and conclude that defendants were entitled to disclosure.

"CPLR 3121 is an important disclosure device available in cases in which physical or mental condition is in controversy. Subdivision (a) requires a party to submit to a physical examination upon request of another party and to give authorization for release of hospital records. Subdivision (b) provides that a copy of the report of the examining physician must be given to 'any party requesting to exchange therefor a copy of each report in his control of an examination made with respect to the mental or physical condition in controversy' (CPLR 3121, subd [b]). Contrary to plaintiffs' argument, this rule broadens rather than restricts discovery. Read in context, the exchange provision relates to reports of examinations conducted pursuant to subdivision (a) or otherwise specifically for the litigation * * *

"Plaintiffs offer no reason to shield these doctors' reports

from discovery. Indeed, plaintiffs' interpretation of the discovery scheme runs counter to its rationale. The procedures advance the truth-determining function of trial and speedy disposition of cases (see *Allen v Crowell-Collier Pub. Co.,* 21 NY2d 403, 407, *supra; Rios v Donovan,* 21 AD2d 409, 411). With the advent of liberal disclosure rules, there was an abandonment of the notion that the results of trial would be based on tactics or surprise; the outcome is to be based on the facts as developed through meaningful preparation prior to trial.

"Plaintiffs have placed their physical condition in controversy and may not insulate from disclosure material necessary to the defense concerning that condition (see *Greuling v Breakey,* 56 AD2d 540; *Moses v Woodbury,* 54 AD2d 961; *Brooks v Hausauer,* 51 AD2d 660). Given the purposes of discovery, artificial barriers are not to be read into the carefully designed system favoring 'full disclosure'."

Further, the plaintiff had secured an order, dated September 27, 1983, from Special Term, Part 8A, requiring that defendants' physicians' reports be furnished to him based upon his request for such reports.

Finally, the plaintiff argues that the report constitutes privileged material prepared for litigation and thus is barred from discovery pursuant to CPLR 3101 (d). The Court of Appeals in *Hoenig v Westphal (supra,* pp 609-610) specifically rejected this contention as well, stating: "Since such reports, for whomever prepared, could be classified as material prepared for litigation and thus exempt from disclosure under CPLR 3101 (subd [d]), 3121 (subd [b]) gives the plaintiff or another party a right to discovery not otherwise available. Subdivision (b) quite simply makes discoverable from a person requesting an examination material otherwise not discoverable. It cannot be read to restrict the right to discover material generally subject to disclosure." Concur—Kupferman, J. P., Sullivan, Ross and Rosenberger, JJ.

Ellerin, J., dissents in part in a memorandum as follows: I cannot agree that the medical exchange rule is meant to apply to a report which is obtained in the course of preparation for litigation of a medical malpractice action from a consultant nontreating physician who will not be called at trial. Accordingly, I would affirm Special Term's denial of the motion insofar as it is directed to Dr. Kaplan's report.