OPINION OF THE COURT
Lorraine S. Miller, J.
Plaintiff Bryan Evans complains in this medical malpractice action that on February 26, 1993, Dr. Robert Lerch performed unnecessary endoscopic sinus surgery — a procedure intended for individuals suffering from chronic sinusitis who have not responded to medical therapy — even though Evans did not have a history of chronic sinusitis. As a result of that surgery, plaintiff claims to have a greatly diminished ability to taste and smell. Evans is a hospitality and beverage professional who had been pursuing a career as a wine and spirits writer. In aid of the latter, he was also studying for accreditation as a “Master of Wine.” It is alleged that the surgery effectively destroyed his ability to pursue this career because the Master of Wine examination contains a tasting component, which Evans can no longer pass. In turn, because of this, Evans asserts that he will be prevented from completing and publishing three manuscripts written in preparation for the Master of Wine examination.
THE “MASTER OF WINE” DIPLOMA
The prestigious “M.W.”, as the accreditation is known, is the wine world’s equivalent of a doctorate. Sponsored by the Institute of Masters of Wine, in England, the M.W. commands a level of respect comparable to that accorded celebrity chefs. (See, Goldberg, Tough Wine Course Has New Students, NY Times, Oct. 19, 1988, at C14, col 5; Goldberg, Master of Wine Tries to Make it Simple; Wine for Dummies, NY Times, June 16, 1996, section 13LI, at 8, col 1.) The exacting requirements are at least five years of practical work experience with wines and spirits, culminating in a four-day examination. The 12V2- *889 hour theoretical portion of the exam consists of five tests, encompassing viticulture (grape growing), vinification (wine making), the general handling of wine (blending, maturing, bottling, shipping), the commercial aspects (marketing, import and sales regulations), plus an essay. Of the more than 1,900 people who have sat for the exam, only 234 people — about 13% — have earned the Master of Wine diploma since the program began in 1953 in London.[1] Of these, only some 17 or so are American. (Epstein, O.C. EATS Tries to Bring Wine Fans to Their Senses, Los Angeles Times, Nov. 5, 1998.)
Evans has been in the restaurant beverage business for some time and began preparing to sit for the M.W. examination in 1990 but, because of Lerch’s allegedly negligent surgery, he has lost his ability now to pass the “practical” test. In this 6V2-hour portion of the exam, applicants must “nose,”[2] taste and comment on 8 to 12 unlabeled wines, giving a description of that wine, and accurately describing their quality, areas of production, state of maturity and grape varieties. Apparently at one time Evans was quite skilled at this. At his deposition Evans gave the example of being able to identify with precision a line of single malt Scotch whiskies by simply “nosing” each of them.
THE MOTIONS
Lerch moves, pursuant to CPLR 3101 (a), 3120 and 3124, to compel Evans to comply with demands for authorizations for prior treating physicians, a notice for discovery and inspection of three manuscripts written by plaintiff, and for a further deposition of Evans regarding his surgical treatment. Evans cross-moves to compel Lerch to provide a copy of primary and excess insurance coverage and for information as to any claims made against this coverage during the relevant period.
Evans testified at his deposition that the M.W. exam is made up of two components, theory and wine tasting, and that he drafted the manuscripts as an exercise to prepare himself for the theory side of the exam, which is unrelated to his tasting capacity. Since his sensory loss is unrelated to the preparation of the manuscripts, the books would normally be irrelevant to *890 this litigation. However, since Evans also asserts that attaining an M.W. would help him get his three manuscripts published and he claims to be limited in his ability to attain the M.W. due to the defendant’s surgery, anything related to this claim of damages is a proper and appropriate basis for Lerch’s demand to produce the drafts.
Evans opposes the demand by asserting a common-law copyright for works in progress. He purportedly fears that turning them over for examination raises the possibility that they “may be misappropriated and pirated.” Moreover, he asserts that since the book drafts need further editing, “plaintiff would suffer professional embarrassment by peer review of his unpolished work.” This argument is clearly specious. Common-law copyright no longer exists. The Federal Copyright Act of 1976, 17 USC § 301 (a), entirely preempted all State copyright protections. All published or unpublished material created after January 1, 1978 is now protected by statute from the moment it is created. (Patrick v Francis, 887 F Supp 481 [WD NY 1995].) Evans’s copyright is not destroyed by turning the book drafts over to defense counsel for the limited purpose of having an expert examine them and the Federal copyright statute provides all the protection Evans requires. Thus, unless Evans is willing to stipulate that he will not be claiming the future value of the unpublished manuscripts as damages, Lerch is entitled to inspect them.
Lerch also moves to compel Evans to comply with the preliminary conference order of February 4, 1999 in which Evans was required to provide authorizations for prior treating physicians’ records of treatment for complaints of headaches, nose-related problems, and/or numbness. CPLR 3101 (a) mandates “full disclosure of all matter material and necessary in the prosecution or defense of an action.” The Court of Appeals has instructed that this requirement be interpreted liberally, approving the disclosure of “any facts bearing on the controversy which will assist [in] preparation for trial.” (Allen v Crowell-Collier Publ. Co., 21 NY2d 403, 406 [1968].) Evans cannot insulate himself from disclosure of facts about his condition which may be necessary to the defense of this matter. (Moreno v Greater N. Y. Dental Adm’rs, 120 AD2d 343 [1st Dept 1986]; see also, Holland v Presbyterian Hosp., 122 AD2d 750 [1st Dept 1986].) Plaintiff’s claim makes the issue of whether he had preexisting, chronic sinus problems material and necessary to the defense of this action. Therefore, any records of treatment for sinus or numbness problems prior to *891 Lerch’s surgery are essential to the defense of plaintiffs claim that he did not suffer from chronic sinusitis and thus should not have had the surgery.
Nevertheless, Lerch’s request for collateral source records prior to February 1999 is overbroad. If the records from the clinic Evans went to before Lerch’s surgery do not reveal that Evans was treated for any sinus problems, there is no need for further authorizations. However, if such records do indicate treatment for nasal or sinus problems (not simply headaches), defendant will then be entitled to obtain those records only.
Finally, Lerch claims entitlement to a third examination before trial of Evans, relating to an 11-page record faxed to Lerch’s attorney’s office on June 30, 1999 regarding the treatment rendered by Lerch. However, defense counsel acknowledged receiving a copy of the very same document prior to the last court conference and at that time she argued for a second deposition. Plaintiffs counsel consented to a limited one, which has been conducted. There is no need for plaintiff to submit yet again. Defense counsel possessed the same information at the last conference; the present motion is duplicative and unnecessary.
Plaintiffs cross motion for discovery of the insurance policies and information as to other claims made against Lerch’s insurance policy during the relevant period has been partially resolved and the court has been informed that the policies themselves have been turned over. However, information regarding third-party claims is not discoverable and, to that extent, the cross motion is denied. (See, Weiner v Lenox Hill Hosp., 164 Misc 2d 759 [Sup Ct, NY County 1995], affd 224 AD2d 299 [1996].)

. The Institute maintains a website at www.masters-of-wine.com/ index2.html. Other information about wine can be found at www.wino.net/ index.html, particularly in the “Vinous Corpus” (wine and the law) section.

. “Nose” is a word wine tasters use to describe the process of assessing the bouquet, or aroma, of the wine. (Zraly, Windows On the World — Complete Wine Course, at 15 [1997].)